# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

| | |
|---|---|
| MATTHEW SHEPPARD and PAUL WALKER, on behalf of themselves and a class of similarly situated persons, | **CASE NO.: _____** |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| MANAGED CARE OF NORTH AMERICA, INC., | |
| Defendant. | |

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ..................................................................................................1

II.     JURISDICTION, VENUE, AND CHOICE OF LAW .........................................3

III.    PARTIES ..............................................................................................................4

        A.      Plaintiff Matt Sheppard........................................................................4

        B.      Plaintiff Paul Walker.............................................................................5

        C.      Defendant MCNA ..................................................................................5

IV.     FACTUAL BACKGROUND ...............................................................................6

        A.      MCNA failed to adequately protect customer data, resulting in the
                Data Breach............................................................................................6

        B.      MCNA was well aware of the need for it to take special care with
                consumers PII and Medical information.................................................9

        C.      MCNA unnecessarily delayed disclosure of the Data Breach and
                notification to those affected................................................................10

        D.      MCNA Failed To Comply With Regulatory Guidance And
                Industry-Standard Cybersecurity Practices..........................................10

        E.      MCNA failed to comply with HIPAA's data security requirements....................13

        F.      The Data Breach puts Plaintiffs and Class Members at increased
                risk of fraud and identity theft. ...........................................................15

V.      CLASS ACTION ALLEGATIONS ...................................................................18

VI.     CAUSES OF ACTION .......................................................................................20

        A.      Claims Brought on Behalf of the Nationwide Class ............................20

COUNT ONE NEGLIGENCE ........................................................................................20

COUNT TWO NEGLIGENCE PER SE .........................................................................22

COUNT THREE GROSS NEGLIGENCE......................................................................24

COUNT FOUR BREACH OF EXPRESS CONTRACTS...............................................26

COUNT FIVE BREACH OF IMPLIED CONTRACTS..................................................28

011174-11/2274758 V2

COUNT SIX BREACH OF IMPLIED DUTY OF  GOOD FAITH AND FAIR
DEALING ............................................................................................. 30

COUNT SEVEN UNJUST ENRICHMENT (ALTERNATIVE TO BREACH OF
CONTRACT CLAIM) ........................................................................... 31

COUNT EIGHT DECLARATORY JUDGMENT .................................................. 32

B.      Claims Brought on Behalf of the Iowa Subclass ............................... 33

COUNT NINE VIOLATION OF THE PERSONAL INFORMATION
SECURITY BREACH PROTECTION LAW, IOWA CODE § 715C.2 ........ 33

C.      Claims Brought on Behalf of the Texas Subclass ............................... 34

COUNT TEN DECEPTIVE TRADE PRACTICES—CONSUMER
PROTECTION ACT, TEXAS BUS. & COM. CODE §§ 17.41, ET SEQ. ..... 34

VII.     PRAYER FOR RELIEF ..................................................................................... 38

VIII.    DEMAND FOR JURY TRIAL ......................................................................... 39

011174-11/2274758 V2

Plaintiffs, individually and on behalf of all others similarly situated ("Plaintiffs"), bring this action against Defendant Managed Care of North America, Inc. ("MCNA" or "Defendant"), seeking monetary damages, restitution, and/or injunctive relief for the proposed Class and Subclass, as defined below. Plaintiffs make the following allegations upon information and belief, the investigation of their counsel, and personal knowledge or facts that are a matter of public record.

## I.       INTRODUCTION

1.        The release, disclosure, and publication of sensitive, private data can be devasting. Not only is it an intrusion of privacy and a loss of control, but it is a harbinger of identity theft: for victims of a data breach, the risk of identity theft more than quadruples.[1] A data breach can have grave consequences for victims for years after the actual date of the breach—with the obtained information, thieves can wreak many forms of havoc: open new financial accounts, take out loans, obtain medical services, obtain government benefits, and/or obtain driver's licenses in the victims' names, forcing victims to maintain a constant vigilance over the potential misuse of their information.

2.        Florida-based dental insurance provider Managed Care of North America, Inc. markets itself as "The Premier Dental Plan" and claims:

> MCNA Dental (MCNA Insurance Company and Managed Care of North America, Inc.) is a leading dental benefits manager committed to providing high quality services to state agencies and managed care organizations for their Medicaid, Children's Health Insurance Program (CHIP), and Medicare members. We serve of 5 million children and adults.[2]
>
> Our mission is to deliver value to our clients and providers by providing **access**, **quality** and **service excellence** that improves the oral health outcomes of our members[3]

---

[1] Dave Maxfield & Bill Latham, *Data Breaches: Perspectives from Both Sides of the Wall*, 25 S.C. LAWYER 28-35 (May 2014), https:// https://articlegateway.com.

[2] *Company Overview*, MCNA Dental, https://www.mcna.net/en/company-overview (last visited Jun. 12, 2023).

[3] *Id.* (emphasis in original).

3.      Particularly relevant to this lawsuit, MCNA explicitly touted its accreditation, controls and certifications relating to its process and controls that ensured security, information management systems and data:

> We have also earned National Committee for Quality Assurance (NCQA) Accreditation in Credentialing and Recredentialing*. In support of preserving the integrity of nationally reported data, we have completed an NCQA-Certified HEDIS® Compliance Audit™ and received the NCQA seal of completion, recognizing that our dental quality measures are in accordance with Healthcare Effectiveness Data and Information Set (HEDIS) standards for accuracy.
>
> We have successfully completed an independent, third-party SOC 2 audit by the AICPA of the processes and controls that ensure the security and availability of our information management systems and data.
>
> These certifications underscore our continuous commitment to operating under the highest quality standards in our industry and to ensuring the best service possible for our members, providers, and clients.

4.      Despite these representations, MCNA's data systems were hacked and the detailed and highly valuable Personally Identifiable Information (PII) and medical information of at least 8,923,662 persons was stolen. The information taken included "a trove of patients' personal data, including names, addresses, dates of birth, phone numbers, email addresses, Social Security numbers and driver's licenses or other government-issued ID numbers. Hackers also accessed patients' health insurance data, including plan information and Medicaid ID numbers, along with bill and insurance claim information."[4] (The "Data Breach")

5.      MCNA further reported that in some cases, data pertained to a patient's "parent, guardian, or guarantor," suggesting that children's personal data was accessed during the breach.[5]

6.      On May 30, 2023, MCNA disclosed that on March 6, 2023, it discovered that hackers installed malicious code on its systems and that between February 26 and March 7, the

---

[4] *Ransomware attack on US dental insurance giant exposes data of 9 million patients*. TechCrunch May 31, 2023 *available at*: https://techcrunch.com/2023/05/31/ransomware-attack-on-us-dental-insurance-giant-exposes-data-of-9-million-patients/ (last accessed June 12, 2023).

[5] *See id.*

attackers stole both medical and account payment information.[6] MCNA disclosed that hackers obtained information about dental and orthodontic treatments, including x-ray photos. And Social Security Numbers (SSNs), drivers' license numbers, bills and insurance claims of 8,923,662 people that included names, billing addresses, emails, phone numbers, birth dates, and account numbers.[7]

7.      As a result of the Data Breach, through which their Personally Identifiable Information ("PII") and medical information was compromised, disclosed, and obtained by unauthorized third parties, Plaintiffs and Class members have suffered concrete damages and are now exposed to a heightened and imminent risk of fraud and identity theft for a period of years, if not decades. Furthermore, Plaintiffs and Class members must now and in the future closely monitor their financial accounts to guard against identity theft, at their own expense. Consequently, Plaintiffs and the other Class members will incur ongoing out-of-pocket costs for, *e.g.*, purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

8.      By this Complaint, Plaintiffs seek to remedy these harms on behalf of themselves and all similarly situated individuals whose private information, or that of their minor children, was accessed during the Data Breach.

## II.      JURISDICTION, VENUE, AND CHOICE OF LAW

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711, *et seq.*, because at least one member of the Class, as defined below, is a citizen of a different state than MCNA, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. This Court also has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

---

[6] *See* Ben Kochman, *Data of Early 9 Million People Swiped in Dental Insurer Hack,* Law 360, May 30, 2023. Available at: https://www.law360.com/consumerprotection/articles/1682817 (last accessed June 12, 2023).

[7] *See id.*

10.     The Court has personal jurisdiction over this action because MCNA maintains its principal place of business in this District, has sufficient minimum contacts with this District, and has purposefully availed itself of the privilege of doing business in this District such that it could reasonably foresee litigation being brought in this District.

11.     Venue is proper in this District under 28 U.S.C. § 1391(a) through (d) because MCNA's principal place of business is located in this District and a substantial part of the events or omissions giving rise to the claims occurred in, was directed to, and/or emanated from this District.

### III.     PARTIES

**A.     Plaintiff Matt Sheppard**

12.     Plaintiff Matthew Sheppard is a citizen of and is domiciled in the state of Iowa.

13.     Plaintiff is a customer of MCNA.

14.     Plaintiff provided confidential and sensitive PII to MCNA, as requested and required by MCNA for the provision of its services. MCNA obtained and continues to maintain Plaintiff's PII and has a legal duty and obligation to protect that PII from unauthorized access and disclosure.

15.     Plaintiff would not have entrusted his PII to MCNA had he known that MCNA failed to maintain adequate data security.

16.     On or about May 26, 2023, plaintiff received notification from MCNA that his information was compromised via letter.

17.     Plaintiff subsequently spent several hours taking action to mitigate the impact of the Data Breach, including researching the Data Breach, researching ways to protect himself from data breaches, and reviewing his financial accounts for fraud or suspicious activity. He now plans to spend several hours a month checking account statements for irregularities.

18.     As a result of the Data Breach and the release of his PII, which he expected MCNA to protect from disclosure, Plaintiff has suffered emotional distress, including anxiety, concern, and unease about unauthorized parties viewing and potentially using his PII. As a result of the Data

Breach, Plaintiff anticipates spending considerable time and money to contain the impact of the Data Breach.

**B.      Plaintiff Paul Walker**

19.      Plaintiff Paul Walker is a citizen of and is domiciled in the state of Texas.

20.      Plaintiff's minor daughter, R.W., is a customer of MCNA.

21.      Plaintiff provided confidential and sensitive PII to MCNA, as requested and required by MCNA for the provision of its services. MCNA obtained and continues to maintain Plaintiff's and his minor daughter's PII and has a legal duty and obligation to protect that PII from unauthorized access and disclosure.

22.      Plaintiff would not have entrusted his and his daughter's PII to MCNA had he known that MCNA failed to maintain adequate data security.

23.      On or about June 22, 2023, plaintiff received notification from MCNA that his and his daughter's information was compromised.

24.      Plaintiff subsequently spent several hours taking action to mitigate the impact of the Data Breach, including researching the Data Breach, researching ways to protect himself from data breaches, and reviewing his financial accounts for fraud or suspicious activity. He now plans to spend several hours a month checking account statements for irregularities.

25.      As a result of the Data Breach and the release of his and his daughter's PII, which he expected MCNA to protect from disclosure, Plaintiff has suffered emotional distress, including anxiety, concern, and unease about unauthorized parties viewing and potentially using his and his daughter's PII. As a result of the Data Breach, Plaintiff anticipates spending considerable time and money to contain the impact of the Data Breach.

**C.      Defendant MCNA**

26.      Defendant Managed Care of North America, Inc., dba MCNA Dental Plans, is a private, for-profit dental benefits management company established in 1990 with its principal place of business in Miramar, Florida. MCNA offers long-term Medicare, /Medicaid, CHIP, and commercial plans for private employers, individuals, and families.

27.     MCNA offers dental plans and services for employers, individuals, and families throughout the US. MCNA is the largest dental insurer in the US for government-sponsored Medicare/Medicaid and CHIP, with over five million members across eight states.

28.     In the course of its business, MCNA collects names, phone numbers, Social Security numbers, physical addresses, driver's license information, and medical information from its customers. It also maintains medical records subject to the requirements and standards of the Health Insurance Portability and Accountability Act of 1996 (HIPAA).

## IV.     FACTUAL BACKGROUND

**A.     MCNA failed to adequately protect customer data, resulting in the Data Breach.**

29.     On May 26, 2023, MCNA Dental admitted they had suffered a ransomware attack. MCNA Dental claimed to have first detected the attack on March 6, 2023, but it admits that data was exfiltrated until March 7, 2023. MCNA claims to have blocked the unauthorized access, and launched an investigation to determine the nature and scope of the breach.

30.     MCNA Dental confirmed that malicious code was installed on its systems that allowed unauthorized persons to gain access to its systems and remove Personal Information between February 26, 2023, and March 7, 2023. MCNA Dental has disclosed that over 8,923,662 people were affected, including patients, parents, guardians, and/or guarantors.

31.     The stolen PII included names, addresses, dates of birth, emails, social security numbers, driver's license numbers and/or other government-issued ID numbers, and health insurance information. In addition, medical information, including care for teeth or braces (visits, treating professionals, past care, x-rays/photos, medicines, and treatment), and bills and insurance claims were all removed from MCNA's systems. The information taken included PII and medical information about minors, including information about parents, guardians, and guarantors.

32.     Plaintiff and other class members received the following letter dated May 26, 2023:

**mcna**dental.

Return Mail Processing Center
P.O. Box 6336
Portland, OR 97228-6336

To Enroll, Please Call:
1-888-220-5006
Or Visit:
https://response.idx.us/MCNA-Information
Enrollment Code:

MATTHEW SHEPPARD

May 26, 2023

Su información personal puede haber estado involucrada en un incidente de datos. Si desea recibir una version de esta carta en
español, por favor llame 1-888-220-5006.

### Notice of Data Breach

Dear Matthew Sheppard:

We are sorry to tell you about a privacy event. This letter is from MCNA. We work with the Iowa Department of Human
Services; and the Children's Health Insurance Program to help provide benefits. This event may have involved your
information.

**What happened?**
On March 6, 2023, MCNA became aware of certain activity in our computer system that happened without our permission.
We quickly took steps to stop that activity. We began an investigation right away. A special team was hired to help us. We
learned a cybercriminal was able to see and take copies of some information in our computer system between
February 26, 2023 and March 7, 2023.

**What information may have been involved?**
On May 4, 2023, we told the state Medicaid agency that this event may have involved your information. Here is the kind of
information that was seen and taken:
  · Information used to contact you, like first and last name, address, date of birth, phone number, email
  · Social Security number
  · Driver's license number/other government-issued ID number
  · Health insurance (plan information, insurance company, member number, Medicaid-Medicare ID numbers)
  · Care for teeth or braces (visits, dentist name, doctor name, past care, x-rays/photos, medicines, and treatment)
  · Bills and insurance claims

Some of this information was for a parent, guardian, or guarantor. A guarantor is the person who paid the bill. Information
which was seen and taken was not the same for everyone.

**Why did this happen?**
A cybercriminal accessed our computer system without our permission.

**What was done about it?**
When we learned about the activity, we immediately began an investigation. Law enforcement was contacted. We are also
making our computer systems even stronger than before because we do not want this to happen again.

We would like to offer you a free identity theft protection service. We will pay for the cost of this service for 1 year so that it
is free for you. We have attached steps on how to sign up for this free service.

AI7731 v.02

**What should I do?**
You can sign up for the free identity theft protection service. Please check your bills and accounts to be sure they look correct. We have attached steps on how to do that.

**What if I have a question?**
If you have any questions or concerns, please call us toll free at 1-888-220-5006 from 9 am to 9 pm ET, Monday through Friday (except holidays). You can also see more information at: https://response.idx.us/MCNA-Information. We are sorry for any concern this event may cause.

Sincerely,

*Shannon LePage*

Shannon LePage
Chief Executive Officer, MCNA Dental

AI7732 v.02

011174-11/2274758 V2

33.     While Plaintiff received a letter explaining what happened, not everyone whose data was stolen, as MCNA Dental does not have current addresses for everyone. Accordingly, the organization published a substitute notice on IDX, which will stay online for 90 days. On that notice, MCNA Dental identified a list of over a hundred healthcare providers indirectly impacted by this incident. It is unclear if those entities will publish separate notices of the Data Breach.

**B.     MCNA was well aware of the need for it to take special care with consumers PII and Medical information.**

34.     MCNA's website contains a Notice of Privacy Practices.[8] MCNA states, "[o]ne of our strengths is our ability to administer dental plans in an effective and innovate manner while safeguarding our members' protected health information."[9] MCNA promises that it is "committed to complying with the requirements and standards of the Health Insurance Portability and Accountability Act of 1996 (HIPAA)."[10]

35.     MCNA admits that it is required by law to "maintain the privacy and security of your protected health information."[11]

36.     MCNA claims that it will protect information given to it, including names, addresses, telephone numbers, and social security numbers, "in all formats including electronic, written and oral information."[12]

37.     MCNA's privacy practices explicitly states that it will "let you know promptly if a breach occurs that may have compromised the privacy or security of your information."[13]

38.     As early as 2014, the FBI alerted the healthcare industry that they were an increasingly preferred target of hackers, stating "[t]he FBI has observed malicious actors targeting healthcare related systems, perhaps for the purpose of obtaining Protected Health Information

---

[8] See MCNA Dental Our Privacy Practices, https://www.mcna.net/en/privacy (last accessed June 16, 2023).

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

(PHI) and/or Personally Identifiable Information (Personal Information)" so that these companies can take the necessary precautions to thwart such attacks.[14]

**C.     MCNA unnecessarily delayed disclosure of the Data Breach and notification to those affected.**

39.     MCNA admits that it became aware of the Data Breach as early as March 6, 2023. Yet it delayed notifying affected consumers for over ten weeks, until May 26, 2023. This delay gave the cybercriminals who obtained MCNA's ill-guarded records ample time to post and sell consumers' valuable PII on the dark web and elsewhere.

40.     Had MCNA promptly alerted Plaintiffs and Class Members to the Data breach, as it promised to do in its privacy policy, then Plaintiffs and Class Members could have taken reasonable steps to protect themselves, including by freezing their credit accounts, acquiring credit monitoring services, and otherwise guarding their PII from illicit use.

**D.     MCNA Failed To Comply With Regulatory Guidance And Industry-Standard Cybersecurity Practices.**

41.     MCNA's data security failure stems from its failure to comply with state and federal laws and requirements as well as industry standards governing the protection of PII.

42.     At least 24 states have enacted laws addressing data security practices that require that businesses that own, license or maintain PII to implement and maintain "reasonable security procedures and practices" and to protect PII from unauthorized access.

43.     MCNA also failed to comply with Federal Trade Commission ("FTC") guidance on protecting PII and industry-standard cybersecurity practices. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, failing to use reasonable measures to protect PII by companies like Defendant. Several publications by the FTC outline the importance of implementing reasonable security systems to protect data. The FTC has made clear that protecting sensitive customer data should factor into virtually all business decisions.

---

[14] Reuters, FBI warns healthcare firms they are targeted by hackers, August 20, 2014, http://www.reuters.com/article/us-cybersecurity-healthcare-fbi-idUSKBN0GK24U20140820 (last accessed June 16, 2023).

44.     The FTC recommends:

- limiting access to customer information to employees who have a business reason to see it;

- keeping customer information in encrypted files provides better protection in case of theft;

- maintaining up-to-date and appropriate programs and controls to prevent unauthorized access to customer information;

- using appropriate oversight or audit procedures to detect the improper disclosure or theft of customer information;

- monitoring both in- and out-bound transfers of information for indications of a compromise, such as unexpectedly large amounts of data being transmitted from your system to an unknown user; and,

- monitoring activity logs for signs of unauthorized access to customer information.[15]

45.     The FTC has also issued numerous guides for businesses highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[16]

46.     In 2016, the FTC updated its publication, *Protecting PII: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[17] The guidelines note businesses should protect the personal customer information that they keep; properly dispose of PII that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

---

[15] Federal Trade Commission, *Financial Institutions and Customer Information: Complying with the Safeguards Rule*, available at https://www.ftc.gov/tips-advice/business-center/guidance/financial-institutions-customer-information-complying (last accessed June 16, 2023).

[16]    Federal Trade Commission, *Start With Security* at 2, available at https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last accessed June 16, 2023).

[17] Federal Trade Commission, *Protecting PII: A Guide for Business*, available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last accessed June 16, 2023).

47.     The FTC recommends that businesses delete payment card information after the time needed to process a transaction; restrict employee access to sensitive customer information; require strong passwords be used by employees with access to sensitive customer information; apply security measures that have proven successful in the particular industry; and verify that third parties with access to sensitive information use reasonable security measures.

48.     The FTC also recommends that companies use an intrusion detection system to immediately expose a data breach; monitor incoming traffic for suspicious activity that indicates a hacker is trying to penetrate the system; monitor for the transmission of large amounts of data from the system; and develop a plan to respond effectively to a data breach in the event one occurs.

49.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

50.     The FTC has interpreted Section 5 of the FTC Act to encompass failures to appropriately store and maintain personal data.

51.     MCNA was aware of its obligations to protect its customers' PII and privacy before and during the Data Breach yet failed to take reasonable steps to protect customers from unauthorized access. In this case, MCNA was at all times fully aware of its obligation to protect the PII of MCNA's customers because of its status as the largest dental insurer in the nation for government-sponsored Medicare/Medicaid and CHIP. MCNA was also aware of the significant repercussions if it failed to do so because MCNA collected PII from millions of consumers and it knew that this PII, if hacked, would result in injury to consumers, including Plaintiffs and Class Members.

52.     Based upon the known details of the Data Breach and how it occurred, MCNA also failed to fully comply with industry-standard cybersecurity practices, including, but not limited to,

proper firewall configuration, network segmentation, secure credential storage, rate limiting, user-activity monitoring, data-loss prevention, and intrusion detection and prevention.

**E.     MCNA failed to comply with HIPAA's data security requirements.**

53.     MCNA is covered by HIPAA (see 45 C.F.R. § 160.102) and is required to comply with the HIPAA Privacy Rule and Security Rule.[18] These rules establish national standards for the protection of patient information, including protected health information, defined as "individually identifiable health information" which either "identifies the individual" or where there is a "reasonable basis to believe the information can be used to identify the individual," that is held or transmitted by a healthcare provider. See 45 C.F.R. § 160.103.

54.     HIPAA prohibits unauthorized disclosures of "protected health information" and it requires that Defendant implements appropriate safeguards for this information. HIPAA requires that entities covered by its rules, including MCNA provide notice of a breach of unsecured protected health information—i.e., non-encrypted data—without unreasonable delay and in no case later than 60 calendar days after discovery of a breach.

55.     Following a data breach at a HIPAA covered entity, the HIPAA Omnibus Rule dictates it "must now undertake a four-factor risk assessment to determine whether or not PHI has been compromised and overcome the presumption that the breach must be reported." The four-factor risk assessment includes:

a)   the nature and extent of the PHI involved in the incident (e.g., whether the incident involved sensitive information like social security numbers);

b)   the recipient of the PHI;

c)   whether the PHI was actually acquired or viewed; and,

---

[18] 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

d) the extent to which the risk that the PHI was compromised has been mitigated following unauthorized disclosure (e.g., whether it was immediately sequestered and destroyed)."[19]

56.     The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, requires HIPAA covered entities and their business associates to provide notification following a breach of unsecured protected health information.

57.     MCNA failed to comply with these HIPAA requirements and, indeed, its own Privacy Practices. MCNA did not:

a) Maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

b) Adequately protect Plaintiff's and the Class Members' Personal Information;

c) Ensure the confidentiality and integrity of electronically protected health information created, received, maintained, or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

d) Implement technical policies and procedures for electronic information systems that maintain electronically protected health information to allow access only to those persons or software programs that have been granted access rights, in violation of 45 C.F.R. § 164.312(a)(1);

e) Implement adequate policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. § 164.308(a)(1)(i);

f) Implement adequate procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports, in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

g) Protect against reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding

---

[19] 78 Fed. Reg. 5641-46; see also 45 C.F.R. § 164.304.

individually identifiable health information, in violation of 45 C.F.R. §
164.306(a)(3);

h)  Take safeguards to ensure that Defendant's business associates adequately protect
protected health information;

i)  Conduct the four-factor Risk Analysis following the Data Breach;

j)  Properly send timely notice to Plaintiff and the Classes pursuant to 45 C.F.R. §§
164.400-414;

k)  Ensure compliance with the electronically protected health information security
standard rules by its workforce, in violation of 45 C.F.R. § 164.306(a)(4); and/or

l)  Train all members of its workforce effectively on the policies and procedures with
respect to protected health information as necessary and appropriate for the
members of its workforce to carry out its functions and to maintain security of
protected health information, in violation of 45 C.F.R. §164.530(b).

**F.   The Data Breach puts Plaintiffs and Class Members at increased risk of fraud and
identity theft.**

58.     MCNA's failure to keep Plaintiffs' and Class Members' PII secure has severe
ramifications. Given the sensitive nature of the PII stolen in the Data Breach—names, addresses,
zip codes, phone numbers, email addresses, dates of birth, Social Security Numbers, health
insurance account information, and driver's license numbers—hackers can commit identity theft,
financial fraud, and other identity-related fraud against Plaintiffs and Class Members now and into
the indefinite future. As a result, Plaintiffs have suffered injury and face an imminent and
substantial risk of further injury including identity theft and related cybercrimes due to the Data
Breach.

59.     LockBit, one of the world's most active ransomware groups, claimed the
cyberattack on MCNA Dental on March 7, 2023. LockBit published data samples from MCNA's
databases and threatened to publish 700GB of PII it exfiltrated from MCNA's networks unless it

was paid $10 million. On April 7, 2023, LockBit released all of the data it claimed to have taken from MCNA, making it available for download by anyone.[20]

60.     It is no wonder Plaintiffs' stolen PII is circulating on the dark web, as it is highly valuable. Malicious actors use PII to, among other things, gain access to consumers' bank accounts, social media, and credit cards. Malicious actors can also use consumers' PII to open new financial accounts, open new utility accounts, obtain medical treatment using victims' health insurance, file fraudulent tax returns, obtain government benefits, obtain government IDs, or create "synthetic identities."[21]

61.     Further, identity thieves often wait months or years to use PII obtained in data breaches, as victims often become complacent and less diligent in monitoring their accounts after a significant period has passed. These bad actors will also re-use stolen PII, meaning individuals can be the victim of several cybercrimes stemming from a single data breach. Moreover, although elements of some Plaintiffs' and Class Members' data may have been compromised in other data breaches, the fact that the Breach centralizes the PII and identifies the victims as MCNA's customers materially increases the risk to Plaintiffs and the Class.

62.     The U.S. Government Accountability Office determined that "stolen data may be held for up to a year or more before being used to commit identity theft," and that "once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years."[22] Moreover, there is often significant lag time between when a person suffers harm due to theft of their PII and when they discover the harm. Plaintiffs will therefore need to spend time and money to continuously monitor their accounts for years to ensure their PII obtained in the Data Breach is not used to harm them. Plaintiffs and Class Members thus have been harmed in the amount of the actuarial present value of ongoing high-quality identity defense and credit

---

[20] *See, supra,* Note 6.

[21] A criminal combines real and fake information to create a new "synthetic" identity, which is used to commit fraud.

[22] U.S. Gov't Accountability Off., GAO-07-737, *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* 42 (2007), https://www.govinfo.gov/content/pkg/GAOREPORTS-GAO-07-737/html/GAOREPORTS-GAO-07-737.htm (last visited June 16, 2023).

011174-11/2274758 V2

monitoring services made necessary as mitigation measures because of MCNA's Data Breach. In other words, Plaintiffs have been harmed by the value of identity protection services they must purchase in the future to ameliorate the risk of harm they now face due to the Breach.

63.     Plaintiffs and Class Members have also realized harm in the lost or reduced value of their PII. MCNA admits the PII compromised in the Breach is valuable. MCNA collects, retains, and uses Plaintiffs' PII to earn revenue. Plaintiffs' PII is not only valuable to MCNA, but Plaintiffs also place value on their PII based on their understanding that their PII is a financial asset to companies who collect it.[23]

64.     Plaintiffs and Class Members have also been harmed and damaged in the amount of the market value of the hacker's unauthorized access to Plaintiffs' PII that was permitted without authorization by MCNA. This market value for access to PII can be determined by reference to both legitimate and illegitimate markets for such information.

65.     Moreover, Plaintiffs and Class Members value the privacy of this information and expect MCNA to allocate enough resources to ensure it is adequately protected. Customers would not have done business with MCNA, provided their PII and payment card information, or paid the same prices for MCNA's goods and services had they known MCNA did not implement reasonable security measures to protect their PII.[24] Customers reasonably expect that the payments they make to MCNA and those made on their behalf through government programs, incorporate the costs to implement reasonable security measures to protect customers' PII. And because consumers value data privacy and security, companies with robust data security practices can

---

[23] *See, e.g.*, Ponemon Institute, LLC, Privacy and Security in a Connected Life: A Study of US, European and Japanese Consumers at p. 14 (March 2015) (explaining that 53% of respondents "believe personal data is a financial asset similar to traded goods, currencies or commodities" and valuing, as but one example, their Social Security number at $55.70), available at https://docplayer.net/836701-Privacy-and-security-in-a-connected-life-a-study-of-us-european-and-japanese-consumers.html.

[24] FireEye, *Beyond the Bottom Line: The Real Cost of Data Breaches* (May 11, 2016), https://www.fireeye.com/blog/executive-perspective/2016/05/beyond_the_bottomli.html (last visited June 16, 2023) (noting approximately 50% of consumers consider data security to be a main or important consideration when making purchasing decisions and nearly the same percentage would be willing to pay more in order to work with a provider that has better data security. Likewise, 70% of consumers would provide less PII to organizations that suffered a data breach).

command higher prices than those who do not. As a result, Plaintiffs and Class Members did not receive the benefit of their bargain with MCNA because they paid for a value for services they expected but did not receive.

66.     Given MCNA's failure to protect their PII, Plaintiffs have a significant and cognizable interest in obtaining injunctive and equitable relief (in addition to any monetary damages, restitution, or disgorgement) that protects them from suffering further harm, as their PII remains in MCNA's possession. Accordingly, this action represents the enforcement of an important right affecting the public interest and will confer a significant benefit on the general public or a large class of persons.

67.     In sum, Plaintiffs and Class Members were injured as follows: (i) theft of their PII and the resulting loss of privacy rights in that information; (ii) improper disclosure of their PII; (iii) loss of value of their PII; (iv) the lost value of unauthorized access to Plaintiffs' and Class Members' PII permitted by MCNA; (v) the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of MCNA's Data Breach; (vi) MCNA's retention of profits attributable to Plaintiffs' and Class Members' PII that MCNA failed to adequately protect; (vii) the certain, imminent, and ongoing threat of fraud and identity theft, including the economic and non-economic impacts that flow therefrom; (viii) ascertainable out-of-pocket expenses and the value of their time allocated to fixing or mitigating the effects of the Data Breach; (ix) overpayments to MCNA for goods and services purchased, as Plaintiffs reasonably believed a portion of the sale price would fund reasonable security measures that would protect their PII, which was not the case; and (x) nominal damages.

## V.     CLASS ACTION ALLEGATIONS

68.     Plaintiff brings this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of a proposed nationwide class (the "Class"), defined as:

> All natural persons in the United States whose Personally Identifiable Information, or that of persons for whom they are legal guardians, was compromised as a result of the Data Breach.

69.     In addition, the State Subclasses are each defined as follows:

**Iowa Subclass:** All members of the Class who reside in Iowa.

**Texas Subclass:** All members of the Class who reside in Texas.

70.     **Numerosity and Ascertainability:** Plaintiffs do not know the exact size of the Class or identity of the Class members, since such information is in the exclusive control of Defendant. Nevertheless, the Class encompasses at least 8,923,662 individuals dispersed throughout the United States. The number of Class members is so numerous that joinder of all Class members is impracticable. The names, addresses, and phone numbers of Class members are identifiable through documents maintained by Defendant.

71.     **Commonality and Predominance:** This action involves common questions of law and fact which predominate over any question solely affecting individual Class members. These common questions include:

    a.  whether Defendant engaged in the conduct alleged herein;

    b.  whether Defendant had a legal duty to use reasonable security measures to protect Plaintiffs' and Class members' PII;

    c.  whether Defendant violated HIPAA;

    d.  whether Defendant timely, accurately, and adequately informed Plaintiffs and Class members that their PII had been compromised;

    e.  whether Defendant breached its legal duty by failing to protect the PII of Plaintiffs and Class members;

    f.  whether Defendant acted reasonably in securing the PII of Plaintiffs and Class members;

    g.  whether Plaintiffs and Class members are entitled to injunctive relief; and

    h.  whether Plaintiffs and Class members are entitled to damages and equitable relief.

72.     **Typicality:** Plaintiffs' claims are typical of the other Class members' claims because all Class members were comparably injured through Defendant's substantially uniform misconduct, as described above. Plaintiffs are advancing the same claims and legal theories on behalf of himself and all other members of the Class that they represent, and there are no defenses

that are unique to Plaintiffs. The claims of Plaintiffs and Class members arise from the same operative facts and are based on the same legal theories.

73.     **Adequacy:** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Class they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. The Class's interest will be fairly and adequately protected by Plaintiffs and their counsel.

74.     **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other detriment suffered by Plaintiffs and other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be virtually impossible for the Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not: individualized litigation creates a potential for inconsistent or contradictory judgments, increases the delay and expense to the parties, and increases the expense and burden to the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by this Court.

## VI.     CAUSES OF ACTION

**A.     Claims Brought on Behalf of the Nationwide Class**

### COUNT ONE
### NEGLIGENCE

75.     Plaintiffs incorporate the foregoing allegations in paragraphs 1 to 74 as if fully set forth herein.

76.     MCNA owed a duty to Plaintiffs and Class members, arising from the sensitivity of the information, the expectation the information was going to be kept private, and the foreseeability of its data safety shortcomings resulting in an intrusion, to exercise reasonable care in safeguarding their sensitive personal information. This duty included, among other things,

-20-

designing, implementing, maintaining, monitoring, and testing MCNA's networks, systems, protocols, policies, procedures, and practices to ensure that Plaintiffs' and Class members' information was adequately secured from unauthorized access.

77.     MCNA's Privacy Notice acknowledged MCNA's duty to adequately protect Plaintiffs' and Class members' PII.

78.     MCNA is covered by HIPAA (see 45 C.F.R. § 160.102) and, as such is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

79.     MCNA owed a duty to Plaintiffs and Class members to implement administrative, physical, and technical safeguards, such as intrusion detection processes that detect data breaches in a timely manner, to protect and secure Plaintiffs' and Class members' PII.

80.     MCNA also had a duty to only maintain PII that was needed to serve customer needs.

81.     MCNA owed a duty to disclose the material fact that its data security practices were inadequate to safeguard Plaintiffs' and Class members' PII.

82.     MCNA also had independent duties under Plaintiffs' and Class members' state laws that required MCNA to reasonably safeguard Plaintiffs' and Class members' PII, and promptly notify them about the Data Breach.

83.     MCNA had a special relationship with Plaintiffs and Class members as a result of being entrusted with their PII, which provided an independent duty of care. Plaintiffs' and Class members' willingness to entrust MCNA with their PII was predicated on the understanding that MCNA would take adequate security precautions. Moreover, MCNA was capable of protecting its networks and systems, and the PII it stored on them, from unauthorized access.

84.     MCNA breached its duties by, among other things: (a) failing to implement and maintain adequate data security practices to safeguard Plaintiffs' and Class members' PII, including administrative, physical, and technical safeguards; (b) failing to detect the Data Breach

-21-

in a timely manner; and (c) failing to disclose that its data security practices were inadequate to safeguard Plaintiffs' and Class members' PII.

85.     But for MCNA's breach of its duties, including its duty to use reasonable care to protect and secure Plaintiffs' and Class members' PII, Plaintiffs' and Class members' PII would not have been accessed by unauthorized parties.

86.     Plaintiffs and Class members were foreseeable victims of MCNA's inadequate data security practices. MCNA knew or should have known that a breach of its data security systems would cause damage to Plaintiffs and Class members.

87.     It was reasonably foreseeable that the failure to reasonably protect and secure Plaintiffs' and Class members' PII would result in unauthorized access to MCNA's networks, databases, and computers that stored or contained Plaintiffs' and Class members' PII.

88.     As a result of MCNA's negligent failure to prevent the Data Breach, Plaintiffs and Class members suffered injury, which includes, but is not limited to, exposure to a heightened and imminent risk of fraud, identity theft, and financial harm. Plaintiffs and Class members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiffs and Class members have also incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter and detect identity theft. The unauthorized acquisition of Plaintiffs' and Class members' PII has also diminished the value of the PII.

89.     The harm to Plaintiffs and Class members was a proximate, reasonably foreseeable result of MCNA's breaches of its aforementioned duties.

90.     Therefore, Plaintiffs and Class members are entitled to damages in an amount to be proven at trial.

## COUNT TWO
## NEGLIGENCE PER SE

91.     Plaintiffs incorporate the foregoing allegations in paragraphs 1 to 74 as if fully set forth herein.

92.     Under the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, MCNA had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs' and Class members' PII.

93.     In addition, under state data security statutes, MCNA had a duty to implement and maintain reasonable security procedures and practices to safeguard Plaintiffs' and Class members' PII.

94.     MCNA breached its duties to Plaintiffs and Class members, under the FTCA and the state data security statutes, by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class members' PII.

95.     MCNA is covered by HIPAA (45 C.F.R. § 160.102) and is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C. HIPAA prohibits unauthorized disclosures of "protected health information." which includes the information at issue here.

96.     Plaintiffs and Class members were foreseeable victims of MCNA's violations of the FTCA, HIPAA and state data security statutes. MCNA knew or should have known that its failure to implement reasonable measures to protect and secure Plaintiffs' and Class members' PII would cause damage to Plaintiffs and Class members.

97.     MCNA's failure to comply with the applicable laws and regulations constitutes negligence *per se.*

98.     But for MCNA's violation of the applicable laws and regulations, Plaintiffs' and Class members' PII would not have been accessed by unauthorized parties.

99.     As a result of MCNA's failure to comply with applicable laws and regulations, Plaintiffs and Class members suffered injury, which includes but is not limited to the exposure to a heightened and imminent risk of fraud, identity theft, financial and other harm. Plaintiffs and Class members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiffs and Class members also have incurred, and

will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiffs' and Class members' PII has also diminished the value of the PII.

100.    The harm to Plaintiffs and the Class members was a proximate, reasonably foreseeable result of MCNA's breaches of the applicable laws and regulations.

101.    Therefore, Plaintiffs and Class members are entitled to damages in an amount to be proven at trial.

## COUNT THREE
## GROSS NEGLIGENCE

102.    Plaintiffs incorporate the foregoing allegations in paragraphs 1 to 74 as if fully set forth herein.

103.    Plaintiffs and Class members entrusted MCNA with highly-sensitive and inherently personal private data subject to confidentiality laws.

104.    In requiring, obtaining and storing Plaintiffs' and Class members' PII, MCNA owed a duty of reasonable care in safeguarding the PII.

105.    MCNA's networks, systems, protocols, policies, procedures, and practices, as described above, were not adequately designed, implemented, maintained, monitored, and tested to ensure that Plaintiffs' and Class members' PII were secured from unauthorized access.

106.    MCNA's networks, systems, protocols, policies, procedures, and practices, as described above, were not reasonable given the sensitivity of the Plaintiffs' and Class members' private data and the known vulnerabilities of MCNA's systems.

107.    MCNA did not comply with state and federal laws and rules concerning the use and safekeeping of this private data.

108.    Upon learning of the Data Breach, MCNA should have immediately disclosed the Data Breach to Plaintiffs and Class members, credit reporting agencies, the Internal Revenue Service, financial institutions, and all other third parties with a right to know and the ability to mitigate harm to Plaintiffs and Class members as a result of the Data Breach.

011174-11/2274758 V2

109.     Despite knowing its networks, systems, protocols, policies, procedures, and practices, as described above, were not adequately designed, implemented, maintained, monitored, and tested to ensure that Plaintiffs' and Class members' PII were secured from unauthorized access, MCNA ignored the inadequacies and was oblivious to the risk of unauthorized access it had created.

110.     MCNA's behavior establishes facts evidencing a reckless disregard for Plaintiffs' and Class members' rights.

111.     MCNA, therefore, was grossly negligent.

112.     MCNA's negligence also constitutes negligence per se.

113.     The negligence is directly linked to injuries.

114.     As a result of MCNA's reckless disregard for Plaintiffs' and Class members' rights by failing to secure their PII, despite knowing its networks, systems, protocols, policies, procedures, and practices were not adequately designed, implemented, maintained, monitored, and tested, Plaintiffs and Class members suffered injury, which includes but is not limited to the exposure to a heightened, imminent risk of fraud, identity theft, financial and other harm. Plaintiffs and Class members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiffs and Class members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiffs' and Class members' PII has also diminished the value of the PII.

115.     The harm to Plaintiffs and the Class members was a proximate, reasonably foreseeable result of MCNA's breaches of the applicable laws and regulations.

116.     Therefore, Plaintiffs and Class members are entitled to damages in an amount to be proven at trial.

## COUNT FOUR
## BREACH OF EXPRESS CONTRACTS

117.   Plaintiffs incorporate the foregoing allegations in paragraphs 1 to 74 as if fully set forth herein.

118.   Plaintiffs and members of the Class, additionally and alternatively, allege that they entered into valid and enforceable express contracts with MCNA.

119.   Under these express contracts, MCNA promised and was obligated to: (a) provide services to Plaintiffs and Class members; and (b) protect Plaintiffs' and the Class members' PII. In exchange, Plaintiffs and members of the Class agreed to pay money for these services.

120.   Both the provision of services, as well as the protection of Plaintiffs' and Class members' PII, were material aspects of these contracts.

121.   MCNA's express representations, including, but not limited to, express representations found in MCNA's Notice of Privacy Practices, formed an express contract requiring MCNA to implement data security adequate to safeguard and protect the privacy of Plaintiffs' and Class members' PII.

122.   Alternatively, the express contracts included implied terms requiring MCNA to implement data security adequate to safeguard and protect the confidentiality of Plaintiffs' and Class members' PII, including in accordance with federal, state and local laws, and industry standards.

123.   Consumers value their privacy, the privacy of their dependents, and the ability to keep their PII associated with obtaining services private. To customers such as Plaintiffs and Class members, services that do not adhere to industry-standard data security protocols to protect PII are fundamentally less useful and less valuable than services that adhere to industry-standard data security. Plaintiffs and Class members would not have entered into these contracts with MCNA without an understanding that their PII would be safeguarded and protected.

124.   A meeting of the minds occurred, as Plaintiffs and members of the Class provided their PII to MCNA and paid for the provided services in exchange for, amongst other things, protection of their PII.

125.     MCNA materially breached the terms of these express contracts, including, but not limited to, the terms stated in the relevant Notice of Privacy Practices. Specifically, MCNA did not comply with federal, state, and local laws, or with industry standards, or otherwise protect Plaintiffs' and the Class members' PII, as set forth above. Further, on information and belief, MCNA has not yet provided Data Breach notifications to some affected Class members who may already be victims of identity fraud or theft or are at imminent risk of becoming victims of identity theft or fraud associated with PII that they provided to MCNA. These Class members are as yet unaware of the potential source for the compromise of their PII.

126.     The Data Breach was a reasonably foreseeable consequence of MCNA's actions in breach of these contracts.

127.     As a result of MCNA's failure to fulfill the data security protections promised in these contracts, Plaintiffs and members of the Class did not receive the full benefit of the bargain, and instead received services that were of a diminished value to that described in the contracts. Plaintiffs and Class members, therefore, were damaged in an amount at least equal to the difference in the value of the secure services they paid for and the services they received.

128.     Had MCNA disclosed that its security was inadequate or that it did not adhere to industry-standard security measures, neither Plaintiffs nor Class members, nor any reasonable person, would have purchased services from MCNA.

129.     As a result of MCNA's breach, Plaintiffs and Class members suffered actual damages resulting from the theft of their PII, as well as the loss of control of their PII, and remain in imminent risk of suffering additional damages in the future.

130.     As a result of MCNA's breach, Plaintiffs and the Class members have suffered actual damages resulting from their attempt to mitigate the effects of the breach of contract and subsequent Data Breach, including but not limited to, taking steps to protect themselves from the loss of their PII.

131.     Accordingly, Plaintiffs and the other members of the Class have been injured as a result of MCNA's breach of contracts and are entitled to damages and/or restitution in an amount to be determined at trial.

## <u>COUNT FIVE</u>
## BREACH OF IMPLIED CONTRACTS

132.    Plaintiffs incorporate the foregoing allegations in paragraphs 1 to 74 as if fully set forth herein.

133.    Plaintiffs and Class members were required to provide their PII to obtain services from MCNA. Plaintiffs and Class members entrusted their PII to MCNA in order to obtain services from them.

134.    By providing their PII, and upon MCNA's acceptance of such information, Plaintiffs and Class members on one hand, and MCNA on the other hand, entered into implied contracts for the provision of adequate data security, separate and apart from any express contracts concerning the services provided, whereby MCNA was obligated to take reasonable steps to secure and safeguard that information.

135.    MCNA had an implied duty of good faith to ensure that the PII of Plaintiffs and Class members in its possession was only used in accordance with their contractual obligations.

136.    MCNA was therefore required to act fairly, reasonably, and in good faith in carrying out its contractual obligations to protect the confidentiality of Plaintiffs' and Class members' PII and to comply with industry standards and state laws and regulations for the security of this information, and MCNA expressly assented to these terms in its Notice of Privacy Practices as alleged above.

137.    Under these implied contracts for data security, MCNA was further obligated to provide Plaintiffs and all Class members with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII.

138.    Plaintiffs and Class members performed all conditions, covenants, obligations, and promises owed to MCNA, including paying for the services provided by MCNA and/or providing the PII required by MCNA.

139.    MCNA breached the implied contracts by failing to take adequate measures to protect the confidentiality of Plaintiffs' and Class members' PII, resulting in the Data Breach. MCNA unreasonably interfered with the contract benefits owed to Plaintiffs and Class members.

140.    Further, on information and belief, MCNA has not yet provided Data Breach notifications to some affected Class members who may already be victims of identity fraud or theft, or are at imminent risk of becoming victims of identity theft or fraud, associated with the PII that they provided to MCNA. These Class members are unaware of the potential source for the compromise of their PII.

141.    The Data Breach was a reasonably foreseeable consequence of MCNA's actions in breach of these contracts.

142.    As a result of MCNA's conduct, Plaintiffs and Class members did not receive the full benefit of the bargain, and instead received services that were of a diminished value as compared to the secure services they paid for. Plaintiffs and Class members, therefore, were damaged in an amount at least equal to the difference in the value of the secure services they paid for and the services they received.

143.    Neither Plaintiffs, nor Class members, nor any reasonable person would have provided their PII to MCNA had MCNA disclosed that its security was inadequate or that it did not adhere to industry-standard security measures.

144.    As a result of MCNA's breach, Plaintiffs and Class members have suffered actual damages resulting from theft of their PII, as well as the loss of control of their PII, and remain in imminent risk of suffering additional damages in the future.

145.    As a result of MCNA's breach, Plaintiffs and the Class members have suffered actual damages resulting from their attempt to mitigate the effect of the breach of implied contract and subsequent Data Breach, including, but not limited to, taking steps to protect themselves from the loss of their PII. As a result, Plaintiffs and the Class members have suffered actual identity theft and the ability to control their PII.

146.    Accordingly, Plaintiffs and Class members have been injured as a result of MCNA's breach of implied contracts and are entitled to damages and/or restitution in an amount to be proven at trial.

## COUNT SIX
## BREACH OF IMPLIED DUTY OF
## GOOD FAITH AND FAIR DEALING

147.     Plaintiffs incorporate the foregoing allegations in paragraphs 1 to 74 as if fully set forth herein.

148.     Plaintiffs and Class members entered into and/or were the beneficiaries of contracts with Defendant, as alleged above.

149.     These contracts were subject to implied covenants of good faith and fair dealing that all parties would act in good faith and with reasonable efforts to perform their contractual obligations—both explicit and fairly implied—and would not impair the rights of the other parties to receive their rights, benefits, and reasonable expectations under the contracts. These included the covenants that Defendant would act fairly, reasonably, and in good faith in carrying out their contractual obligations to protect the confidentiality of Plaintiffs' and Class members' PII and to comply with industry standards and federal and state laws and regulations for the security of this information.

150.     Special relationships exist between Defendant and Plaintiffs and Class members. Defendant entered into special relationships with Plaintiffs and Class members, who entrusted their confidential PII to Defendant and paid for services with Defendant.

151.     Defendant promised and was obligated to protect the confidentiality of Plaintiffs' and Class members' PII from disclosure to unauthorized third parties. Defendant breached the covenant of good faith and fair dealing by failing to take adequate measures to protect the confidentiality of Plaintiffs' and Class members' PII, which resulted in the Data Breach. Defendant unreasonably interfered with the contract benefits owed to Plaintiffs and Class members by failing to implement reasonable and adequate security measures consistent with industry standards to protect and limit access to the PII of Plaintiffs and the Class in Defendant's possession.

152.     Plaintiffs and Class members performed all conditions, covenants, obligations, and promises owed to Defendant, including paying Defendant for services and providing them the confidential PII required by the contracts.

153.     As a result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiffs and Class members did not receive the full benefit of their bargain—services with reasonable data privacy—and instead received services that were less valuable than what they paid for and less valuable than their reasonable expectations under the contracts. Plaintiffs and Class members have suffered actual damages in an amount equal to the difference in the value between services with reasonable data privacy that Plaintiffs and Class members paid for, and the services they received without reasonable data privacy.

154.     As a result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiffs and Class members have suffered actual damages resulting from the theft of their PII and remain at imminent risk of suffering additional damages in the future.

155.     As a result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiffs and Class members have suffered actual damages resulting from their attempt to ameliorate the effect of the Data Breach, including, but not limited to, taking steps to protect themselves from the loss of their PII.

156.     As a direct and proximate cause of Defendant's conduct, Plaintiffs and Class members suffered injury in fact and are therefore entitled to relief, including restitution, declaratory relief, and a permanent injunction enjoining Defendant from its conduct. Plaintiff also seeks reasonable attorneys' fees and costs under applicable law.

**COUNT SEVEN**
**UNJUST ENRICHMENT**
**(ALTERNATIVE TO BREACH OF CONTRACT CLAIM)**

157.     Plaintiffs incorporate the foregoing allegations in paragraphs 1 to 74 as if fully set forth herein.

158.     Plaintiffs and Class members conferred a monetary benefit on Defendant in the form of monetary payments—directly or indirectly—for services received.

159.     Defendant collected, maintained, and stored the PII of Plaintiffs and Class members and, as such, Defendant had knowledge of the monetary benefits conferred by Plaintiffs and Class members.

160.     The money that Plaintiffs and Class members paid to Defendant should have been used to pay, at least in part, for the administrative costs and implementation of data management and security. Defendant failed to implement—or adequately implement—practices, procedures, and programs to secure sensitive PII, as evidenced by the Data Breach.

161.     As a result of Defendant's failure to implement security practices, procedures, and programs to secure sensitive PII, Plaintiffs and Class members suffered actual damages in an amount equal to the difference in the value between services with reasonable data privacy that Plaintiffs and Class members paid for, and the services they received without reasonable data privacy.

162.     Under principles of equity and good conscience, Defendant should not be permitted to retain money belonging to Plaintiffs and Class members because Defendant failed to implement the data management and security measures that are mandated by industry standards and that Plaintiffs and Class members paid for.

163.     Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiffs and the Class all unlawful or inequitable proceeds received by Defendant. A constructive trust should be imposed upon all unlawful and inequitable sums received by Defendant traceable to Plaintiffs and the Class.

## COUNT EIGHT
### DECLARATORY JUDGMENT

164.     Plaintiffs incorporate the foregoing allegations in paragraphs 1 to 74 as if fully set forth herein.

165.     Plaintiffs and the Class have stated claims against Defendant based on negligence, negligence per se, gross negligence and negligent misrepresentation, and violations of various state and federal statutes.

166.     Defendant failed to fulfill its obligations to provide adequate and reasonable security measures for the PII of Plaintiffs and the Class, as evidenced by the Data Breach.

167.    As a result of the Data Breach, Defendant's system is more vulnerable to unauthorized access and requires more stringent measures to be taken to safeguard the PII of Plaintiffs and the Class going forward.

168.    An actual controversy has arisen in the wake of the Data Breach regarding Defendant's current obligations to provide reasonable data security measures to protect the PII of Plaintiffs and the Class. Defendant maintains that its security measures were—and still are—reasonably adequate and denies that they previously had or have any obligation to implement better safeguards to protect the PII of Plaintiffs and the Class.

169.    Plaintiff seeks a declaration that Defendant must implement specific additional, prudent industry security practices to provide reasonable protection and security to the PII of Plaintiffs and the Class. Specifically, Plaintiffs and the Class seek a declaration that Defendant's existing security measures do not comply with their obligations, and that Defendant must implement and maintain reasonable security measures on behalf of Plaintiffs and the Class to comply with their data security obligations.

**B.      Claims Brought on Behalf of the Iowa Subclass**

<u>COUNT NINE</u>
**VIOLATION OF THE PERSONAL INFORMATION
SECURITY BREACH PROTECTION LAW,
Iowa Code § 715C.2**

170.    Plaintiff Sheppard ("Plaintiff," for purposes of this Count), individually and on behalf of the Iowa Subclass, repeats and realleges the allegations in paragraphs 1 to 74 as if fully set forth herein.

171.    MCNA is a business that owns or licenses computerized data that includes PII as defined by Iowa Code § 715C.2(1).

172.    Plaintiff's and Iowa Subclass Members' PII (e.g., Social Security numbers) includes PII as covered under Iowa Code § 715C.2(1).

173.    MCNA is required to accurately notify Plaintiff and Iowa Subclass Members if it becomes aware of a breach of its data security system in the most expeditious time possible and without unreasonable delay under Iowa Code § 715C.2(1).

174.    Because MCNA was aware of a breach of its security system, MCNA had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Iowa Code § 715C.2(1).

175.    By failing to disclose the MCNA data breach in a timely and accurate manner, MCNA violated Iowa Code § 715C.2(1).

176.    Pursuant to Iowa Code § 715C.2(9), a violation of Iowa Code § 715C.2(1) is an unlawful practice pursuant to Iowa Code Ann. § 714.16(7).

177.    As a direct and proximate result of MCNA's violations of Iowa Code § 715C.2(1), Plaintiff and Iowa Subclass Members suffered damages, as described above.

178.    Plaintiff and Iowa Subclass Members seek relief under Iowa Code § 714.16(7), including actual damages and injunctive relief.

**C.    Claims Brought on Behalf of the Texas Subclass**

<u>COUNT TEN</u>
**DECEPTIVE TRADE PRACTICES—CONSUMER PROTECTION ACT,**
**Texas Bus. & Com. Code §§ 17.41, et seq.**

179.    Plaintiff Walker ("Plaintiff," for purposes of this Count), individually and on behalf of the Texas Subclass, repeats and realleges the allegations set forth above.

180.    MCNA is a "person," as defined by Tex. Bus. & Com. Code § 17.45(3).

181.    Plaintiff and the Texas Subclass members are "consumers," as defined by Tex. Bus. & Com. Code § 17.45(4).

182.    MCNA advertised, offered, or sold goods or services in Texas and engaged in trade or commerce directly or indirectly affecting the people of Texas, as defined by Tex. Bus. & Com. Code § 17.45(6).

183.    MCNA engaged in false, misleading, or deceptive acts and practices, in violation of Tex. Bus. & Com. Code § 17.46(b), including:

   a.    Representing that goods or services have approval, characteristics, uses, or benefits that they do not have;

   b.    Representing that goods or services are of a particular standard, quality or grade, if

they are of another;

c. Advertising goods or services with intent not to sell them as advertised; and

d. Failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

184. MCNA's false, misleading, and deceptive acts and practices include:

a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Subclass members' PII, which was a direct and proximate cause of the Data Breach;

b. Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Subclass members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, and Texas's data security statute, Tex. Bus. & Com. Code § 521.052, which was a direct and proximate cause of the Data Breach;

d. Misrepresenting that they would protect the privacy and confidentiality of Plaintiff's and Subclass members' PII, including by implementing and maintaining reasonable security measures;

e. Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Subclass members' PII, including duties imposed by HIPAA and the FTC Act, 15 U.S.C. § 45, and Texas's data security statute, Tex. Bus. & Com. Code § 521.052;

f. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Subclass members' PII; and

g. Omitting, suppressing, and concealing the material fact that they did not comply

with common law and statutory duties pertaining to the security and privacy of
Plaintiffs' and Subclass members' PII, including duties imposed by HIPAA, the
FTC Act, 15 U.S.C. § 45, and Texas's data security statute, Tex. Bus. & Com.
Code § 521.052.

185.    MCNA intended to mislead Plaintiff and Texas Subclass members and induce
them to rely on its misrepresentations and omissions.

186.    MCNA's representations and omissions were material because they were likely to
deceive reasonable consumers about the adequacy of MCNA's data security and ability to
protect the confidentiality of consumers' PII.

187.    Had MCNA disclosed to Plaintiff and Subclass members that its data systems
were not secure and, thus, vulnerable to attack, MCNA would have been unable to continue in
business and it would have been forced to adopt reasonable data security measures and comply
with the law.

188.    MCNA was trusted with sensitive and valuable PII regarding millions of
consumers, including Plaintiff and the Subclass. MCNA accepted the responsibility of protecting
the data while keeping the inadequate state of its security controls secret from the public.
Accordingly, Plaintiff and the Subclass members acted reasonably in relying on MCNA's
misrepresentations and omissions, the truth of which they could not have discovered.

189.    MCNA had a duty to disclose the above facts due to the circumstances of this
case, the sensitivity and extensivity of the PII in its possession, and the generally accepted
professional standards. Such a duty is implied by law due to the nature of the relationship
between consumers, including Plaintiffs and the Texas Subclass, and MCNA because consumers
are unable to fully protect their interests with regard to their data, and placed trust and
confidence in MCNA. MCNA's duty to disclose also arose from its:

   a.   Possession of exclusive knowledge regarding the security of the data in its
        systems;

   b.   Active concealment of the state of its security; and/or

   c.   Incomplete representations about the security and integrity of its computer and

data systems, and its prior data breaches, while purposefully withholding material facts from Plaintiff and the Texas Subclass that contradicted these representations.

190.     MCNA engaged in unconscionable actions or courses of conduct, in violation of Tex. Bus. & Com. Code Ann. § 17.50(a)(3). MCNA engaged in acts or practices which, to consumers' detriment, took advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

191.     Consumers, including Plaintiff and Texas Subclass members, lacked knowledge about deficiencies in MCNA's data security because this information was known exclusively by MCNA. Consumers also lacked the ability, experience, or capacity to secure the PII in MCNA's possession or to fully protect their interests with regard to their data. Plaintiff and Texas Subclass members lack expertise in information security matters and do not have access to MCNA's systems in order to evaluate its security controls. MCNA took advantage of its special skill and access to PII to hide its inability to protect the security and confidentiality of Plaintiff and Texas Subclass members' PII.

192.     MCNA intended to take advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree, with reckless disregard of the unfairness that would result. The unfairness resulting from MCNA's conduct is glaringly noticeable, flagrant, complete, and unmitigated. The MCNA data breach, which resulted from MCNA's unconscionable business acts and practices, exposed Plaintiff and Texas Subclass members to a wholly unwarranted risk to the safety of their PII and the security of their identity or credit, and worked a substantial hardship on a significant and unprecedented number of consumers. Plaintiff and Texas Subclass members cannot mitigate this unfairness because they cannot undo the Data Breach.

193.     MCNA acted intentionally, knowingly, and maliciously to violate Texas's Deceptive Trade Practices-Consumer Protection Act, and recklessly disregarded Plaintiff and Texas Subclass members' rights. MCNA's numerous past data breaches put it on notice that its security and privacy protections were inadequate.

194.     As a direct and proximate result of MCNA's unconscionable and deceptive acts or practices, Plaintiff and Texas Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their PII; overpayment for MCNA's services; loss of the value of access to their PII; and the value of identity protection services made necessary by the Data Breach. MCNA's unconscionable and deceptive acts or practices were a producing cause of Plaintiffs' and Texas Subclass members' injuries, ascertainable losses, economic damages, and non-economic damages, including their mental anguish.

195.     MCNA's violations present a continuing risk to Plaintiff and Texas Subclass members as well as to the general public.

196.     Plaintiff and the Texas Subclass seek all monetary and non-monetary relief allowed by law, including economic damages; damages for mental anguish; treble damages for each act committed intentionally or knowingly; court costs; reasonably and necessary attorneys' fees; injunctive relief; and any other relief which the court deems proper.

## VII.    PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and on behalf of the proposed Class and Subclasses, request that the Court:

a.       Certify this case as a class action, appoint Plaintiffs as class representatives, and appoint Plaintiffs' Counsel as Class Counsel for Plaintiffs to represent the Class;

b.       Find that MCNA breached its duty to safeguard and protect the PII of Plaintiffs and Class members that was compromised in the Data Breach;

c.       Award Plaintiffs and Class members appropriate relief, including actual and statutory damages, restitution, and disgorgement;

d.       Award equitable, injunctive, and declaratory relief as may be appropriate;

e.       Award all costs, including experts' fees and attorneys' fees, and the costs of prosecuting this action;

011174-11/2274758 V2

    f.        Award pre-judgment and post-judgment interest as prescribed by law; and

    g.       Grant additional legal or equitable relief as this Court may find just and proper.

## VIII.   DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated June 26, 2023.                Respectfully submitted,

                            **BUCKNER + MILES**

                            By /s/ David M. Buckner
                            David M. Buckner, Esq., FBN 60550
                            2020 Salzedo Street, Suite 302
                            Coral Gables, Florida 33134
                            Telephone: 305.964.8003
                            E-mail: david@bucknermiles.com

                            Thomas E. Loeser (SBN 38701)
                            (Pro hac vice to be filed)
                            HAGENS BERMAN
                            1301 Second Avenue, Suite 2000
                            Seattle, WA 98101
                            Tel: (206) 623-7292
                            toml@hbsslaw.com

                            *Counsel for Plaintiffs and the Proposed Class and Subclasses*